UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KAYLA REED**, an individual,   ) | Case No. 2:17-CV-5713 |
|                                     ) | |
|     Plaintiff,                      ) | |
|                                     ) | **Judge Arthur D. Spatt** |
| vs.                                 ) | |
|                                     ) | |
| **1-800-FLOWERS.COM, INC.**,        ) | |
|                                     ) | |
|     Defendant.                      ) | |
|                                     ) | |
|                                     ) | |

## BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Kayla Reed ("Plaintiff") respectfully submits this Memorandum of Law in Opposition to Defendant 1-800-FLOWERS.COM, INC.'s ("Defendant") Motion to Dismiss Plaintiff's Complaint ("Complaint" or "Compl."). Defendant's motion should be denied because the "first-filed" rule has no application in this case, and Defendant's primary jurisdiction and due process arguments lack merit.

*Respectfully submitted,*
/s/ Javier L. Merino
Javier L.Merino, Esq. (5294699)
DannLaw
1 Meadowlands Plaza, Suite 200
East Rutherford, NJ 07073
(201) 355-3440
(216) 373-0536 (fax)
 jmerino@dannlaw.com
 DisabilityNotices@dannlaw.com
 Counsel of Record for Plaintiff
 Kayla Reed

## **TABLE OF CONTENTS**

| | |
|---|---:|
| TABLE OF CONTENTS | 2 |
| STATEMENT OF THE FACTS | 3 |
| ARGUMENT | 3 |
| LAW AND ARGUMENT | 8 |
|    A. The First-filed Rule Does Not Apply Because the Two Cases Compared Are Significantly Different, Special Circumstances Exist, and Dismissal is Not Warranted | |
|    B. Defendant's Primary Jurisdiction Arguments Lack Merit | |
|    C. Defendant's due process argument lacks merit | |
|    D. Plaintiff Has Stated A Claim For Relief Under The Unruh Act | |
| CONCLUSION | 15 |
| CERTIFICATE OF SERVICE | 15 |

I.     **Statement of Facts**

Like most of her fellow citizens, Plaintiff Kayla Reed relies on the internet to shop for and purchase goods and services. (Compl. ¶ 16.) Unlike most Americans, Ms. Reed is blind, and utilizes screen reader technology to independently navigate and access information on the web. (Compl. ¶¶ 32, 35.) Readily existing technology exists to remove barriers that prevent individuals with disabilities from accessing the goods and services of places of public accommodation so that individuals with disabilities can enjoy the same degree of access as other customers. (Compl.¶ 17.) Many places of public accommodation have already taken steps to ensure that their websites are equally accessible to blind customers such as Ms. Reed. As detailed in the Complaint, Defendant has not.

Defendant is a specialty florist and retailer who sells flowers and related goods and services throughout the United States, and is headquartered in New York. (Compl. ¶ 12.) Defendant maintains a commercial mobile app and website, www.1800flowers.com, which provides consumers with access to goods and services. (*Id*. ¶ 13.) The website and mobile app allow customers to browse products and product information, find store locations, and make online orders. (Id. ¶ 13.) Defendant programs its website to contain access barriers that prevent free and full use by blind consumers using screen reading software. (*Id*. ¶ 51.) Due to 1-800-Flower's failure and refusal to remove access barriers from www.1800flowers.com, Plaintiff has been denied equal access to the numerous goods, services, and benefits offered to its sighted patrons. (Id. ¶ 47-48.)

II.    **Argument**

Defendant argues that the suit should be dismissed under the first-filed rule, the primary jurisdiction doctrine, and because it claims that the injunctive relief Plaintiff requests would violate due process. As discussed in greater detail below, these arguments should be rejected.

3

The first-filed rule does not apply because the separate lawsuits are not actually competing lawsuits, there are special circumstances that mitigate against the application of the rule in this case, and dismissal would not be the appropriate remedy. Additionally, the arguments related to primary jurisdiction and due process lack merit.

> A. **The First-filed Rule Does Not Apply Because the Two Cases Compared Are Significantly Different, Special Circumstances Exist, and Dismissal is Not Warranted**

The first-filed rule is a doctrine of justiciability which holds that in cases involving "essentially the same lawsuit involving the same parties and the same issues" the first suit has priority "absent the showing of balance of convenience in favor of the second action or unless there are special circumstances giving priority to the second." *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978) (internal citations omitted). As Defendant acknowledges, the classic situation in which the doctrine applies is a case involving the same parties, who each sue each other in a separate forum, in which case the first filed suit would take priority. It is true that some courts have applied the first filed rule in cases involving different plaintiffs raising identical claims, but in these cases, the rule has been applied to transfer, not dismiss the new claims.

This case does not involve mirror image suits, and to apply the doctrine in this case would stretch this important doctrine to the breaking point. Here, there is no separate suit involving Kayla Reed and 1-800 Flowers. There is a lawsuit in Massachusetts suit involving different plaintiffs, who visited different websites maintained by Defendant more than six months before Plaintiff encountered the barriers at issue in this suit. Additionally, unlike the instant case, the plaintiffs in the Massachusetts suit did not raise any state law claims or seek actual damages. The chart below details the pertinent differences between the cases:

|  | Massachusetts Case | This Case |
|---|---|---|
| Plaintiffs | Lisa Gathers, Access Now, Inc., and R. David New | Kayla Reed |
| Subject of suit | www.1800flowers.com, www.napcoimports.com, www.thepopcornfactory.com, and www.cheryls.com | www.1800flowers.com Mobile app |
| Causes of action | ADA Title III | ADA Title III, California Unruh Act |
| Time period in which barriers were encountered | Prior to Feb. 2017 | August 2017 |
| Relief requested | Injunctive relief | Injunctive relief Statutory damages |
| Status of case | Motion to dismiss filed | Motion to dismiss filed |

Unlike the cases cited by Defendant, here resolution of either suit will not fully resolve the other, nor is there any risk of conflicting decisions. This suit involves a different time period, and due to the dynamic nature of ever-changing commercial websites, the plaintiffs in each case likely encountered different access barriers. Additionally, in this case, Plaintiff has asserted that the access barriers she encountered constitute a violation of state law, and that she is entitled to statutory damages on her supplemental state claims arising out of the same transaction or occurrence as her federal claim. Plaintiff has filed a motion to dismiss in the Massachusetts suit, and it is not clear that that case will be resolved on the merits. These special circumstances all mitigate against application of the first filed rule, because the goals of judicial efficiency and justice would not be met if this case were dismissed.

In any event, assuming for the purposes of argument that the first filed rule applied, dismissal would not be the appropriate remedy. Plaintiff is entitled to her day in court on her

5

claim for injunctive relief and statutory damages, and dismissal of the lawsuit would both delay and deny her access to justice. In each case cited by Defendant applying the doctrine in situations that did not involve mirror-image litigation with identical parties, the court chose to transfer or stay litigation rather than dismiss the suit. Should this Court conclude that the first filed rule is appropriate in this case, the case should be promptly transferred to Massachusetts.

### B.      Defendant's Primary Jurisdiction Arguments Lack Merit

Defendant devotes five pages of its brief to the argument that the Court should dismiss the suit because it claims that new DOJ regulations on web access are imminent. Although DOJ did indeed announce its intention to develop such regulations back in 2010, Defendant fails to acknowledge that on July 21, 2017, the DOJ placed its proposed rules on the "Inactive Actions" list, leaving the question of web access for places of public accommodation solely in the jurisdiction of the courts. *See* U.S. Dept. of Justice Regulatory Action Inactive List, *available at* https://www.reginfo.gov/public/jsp/eAgenda/InactiveRINs_2017_Agenda_Update.pdf.

Even if the DOJ were preparing to issue new rules, the primary jurisdiction rule should not apply in this case. "Primary jurisdiction applies where a claim is originally cognizable in the courts, but enforcement of the claim requires, or is materially aided by, the resolution of threshold issues, usually of a factual nature, which are placed within the special competence of the administrative body." *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58–59 (2d Cir. 1994). It is a "prudential" doctrine that "applies to matters outside the conventional experiences of judges or those that fall within the realm of administrative discretion to administrative agencies with more specialized experience, expertise, and insight." *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 74 (E.D.N.Y. 2015) (internal quotation marks and alteration omitted).

"The threshold issue in determining whether this doctrine applies is whether both the court and an agency have jurisdiction over the same issue." *Golden Hill*, 39 F.3d at 59. The Court of Appeals for the Second Circuit has identified four relevant factors for determining whether this discretionary doctrine should be applied: (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made. *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82–83 (2d Cir. 2006).

"[T]he advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings" must be considered. *Id.* at 83 (citation omitted). The doctrine only applies in a "relatively narrow" set of circumstances. *Goya Foods, Inc. v. Tropicana Prods., Inc.,* 846 F.2d 848, 851 (2d Cir. 1988) (citation omitted) ("applied only when a lawsuit raises an issue, frequently the validity of a commercial rate or practice, committed by Congress in the first instance to an agency's determination, particularly when the issue involves technical questions of fact uniquely within the expertise and experience of an agency"). Where the issue is "legal in nature and lies within the traditional realm of judicial competence," courts have generally not applied the doctrine. *Id.*

Here, the *Ellis* factors militate against application of the primary jurisdiction doctrine. Now that the DOJ has halted its rulemaking process, there is no risk of conflicting determinations. Even if there were such a risk, Plaintiff is entitled to a prompt adjudication of her claim. *See Goya Foods, Inc.*, 846 F.2d at 853 (declining to apply the primary jurisdiction doctrine because the benefits of awaiting a decision from the agency was "outweighed by the litigants' need for a prompt adjudication."); *Golden Hill*, 39 F.3d at 60 ("There clearly is a public

7

interest in reasonably prompt adjudication."). Invoking primary jurisdiction would not send the parties to the DOJ for prompt adjudication of her claim. The parties have no administrative remedies to pursue. Rather, the parties would be forced to wait for an administrative rulemaking process to conclude (a process that has been suspended). The parties are not direct participants in the DOJ rulemaking process. They have no ability to impact that process beyond the general public right to comment.

Second, the matter of compliance with the ADA is not one that is uniquely within the jurisdiction of the DOJ. While the DOJ is responsible for issuing ADA regulations, courts routinely decide the extent to which accommodations are required under the ADA and when such accommodations constitute an undue burden. The doctrine of primary jurisdiction does not require that all claims that may fall within an agency's purview must be decided by the agency. *Tassy v. Brunswick Hosp. Center, Inc.*, 296 F.3d 65, 73 (2d Cir. 2002). "Simply because a matter falls within the [the agency's] jurisdiction does not necessarily mean that the primary jurisdiction doctrine is applicable, however. As stated, the doctrine should not be applied mechanically or according to some rigid formula." *Global Crossing Bandwith, Inc. v. OLS, Inc.*, 2009 WL 763483, at * 3 (*citing Ellis v. Tribune Television Co.*, 443 F.3d at 82 for the proposition that "primary jurisdiction analysis is on a case-by-case basis.")

The recent case from the Eastern District of New York is highly instructive for this discussion. In *Andrews v. Blick Art Materials*, No. 1:17-cv-00767-JBW-RLM (E.D.N.Y. Aug. 1, 2017), the court recognized that despite being queried by members of Congress nearly two decades ago on the issue of whether website accessibility falls under the ADA, the DOJ had not yet promulgated rules related to this specific issue. *Andrews v. Blick Art Materials* at 16. The *Andrews* court further acknowledged that the DOJ issued an Advance Notice of Proposed Rulemaking ("ANPRM") seven years ago but no rule or regulation emerged from the ANPRM. *Andrews* at 16.

8

In April 29, 2016, the DOJ withdrew the ANPRM and issued a Supplemental Advance Notice of Proposed Rulemaking ("SANPRM"), which only sought input on accessibility guidelines related to websites of entities covered by Title II of the ADA, but "it is unknown when a similar notice related to regulations concerning Title III entities will be issued." *Andrews* at 16.  On July 21, 2017, DOJ announced that the rulemaking effort was inactive.  U.S. Dept. of Justice Regulatory Action Inactive List, *available at* https://www.reginfo.gov/public/jsp/eAgenda/InactiveRINs_2017_Agenda_Update.pdf.

Defendant also cites *Andrews* for the proposition that courts lack sufficient technical knowledge about website design and assistive technologies used by the blind. (Motion at 12.)  In fact, the case illustrates the court's proficiency in making such determinations.  In *Andrews* the court scheduled a 'Science Day' hearing to feature testimony from expert witnesses to address its gaps in knowledge."

The *Andrews* court declined to apply the primary jurisdiction doctrine, holding that "[t]he court will not delay in adjudicating his claim on the off-chance the DOJ promptly issues regulations it has contemplated issuing for seven years but has yet to make significant progress on." *Id.* at 17. *See also Kayla Reed v. CVS Pharmacy, Inc.*, Case No. 2:17-cv-03877-MWF-SK, at *10. (C.D. Cal. Oct. 3, 2017) (Fitzgerald) (denying a motion to dismiss sought against ADA and California's Unruh Civil Rights Act claims arising out of inaccessibility of a website <u>and</u> mobile app) ("A determination of liability does not necessarily require the Court to master complicated web standards, but rather asks the Court to make exactly the same sort of accessibility determinations that it regularly makes when evaluating the accessibility of physical locations. The primary jurisdiction doctrine is thus inapposite.").)

Here, Defendant's argument that the case must be dismissed under the primary jurisdiction doctrine pending the outcome of a rulemaking process that has been placed on hold should be rejected.

### C. Defendant's due process argument lacks merit

In a related argument, Defendant further claims that it has no obligation to eliminate accessibility barriers unless and until the DOJ issues detailed regulatory guidance mandating a particular standard of compliance. However, as discussed below, since the ADA was passed in 1990, places of public accommodation have been on notice of the statutory obligation to ensure people with disabilities enjoy equal access to goods and services. This statutory obligation is clear and enforceable, and due process does not require detailed guidelines for how such access is to be achieved.

In considering and rejecting a similar argument in *Andrews v. Blick*, Judge Weinstein made the following observations:

> The defendant's principal complaint appears to be that it wants there to be black-and white rules for ADA compliance, and here, there may be shades of gray. But the antidiscrimination provisions the defendant is accused of violating are not simple checklists of clearcut rules—they are standards that are meant to be applied contextually and flexibly. The 'gray' the defendant complains of is a feature of the Act.

*Andrews v. Blick Art Materials, LLC*, No. 17-CV-767 (E.D.N.Y. 2017).

Congress unequivocally intended that the ADA's broad mandate for providing access to public accommodations apply to emerging technologies like websites. "[T]he Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times." *Id*. at 108, reprinted in 1990 U.S.C.C.A.N. at 391 (cited in *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 200-01 (N.D. Cal. 2006).) The legislative history of the definition of "public accommodation" shows that Congress wanted the list of 12 exemplars in the definition to be

"construed liberally" in harmony with the ADA's broad remedial purpose of ensuring that people with disabilities can enjoy equal access to places of public accommodation. S. Rep. No. 101-116, 59 (1990) ("[W]ithin each of these categories, the legislation only lists a few examples and then, in most cases, adds the phrase 'other similar' entities. The Committee intends that the 'other similar' terminology should be construed liberally consistent with the intent of the legislation . . . ."); see also H.R. Rep. 101-485 (III) at 54, reprinted in 1990 U.S.C.C.A.N. at 477 (same). The law's breadth is evident in Congress's agreement with the Attorney General's view that the definition "must bring Americans with disabilities into the mainstream of society 'in other words, full participation in and access to all aspects of society.'" H.R. Rep. 101-485 (II) at 36, reprinted in 1990 U.S.C.C.A.N. at 317 (internal citation omitted).

The DOJ has consistently stated that the general accessibility mandate of the ADA applies to websites, irrespective of the rulemaking process:

> On July 26, 2010, the Department issued an Advanced Notice of Proposed Rulemaking ("ANPRM") on Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations. The Department explained in the ANPRM that although the Department has been clear that the ADA applies to websites of public accommodations, inconsistent court decisions, differing standards for determining web accessibility, and repeated calls for Department action warranted further guidance.
>
> *While the regulatory process may not have proceeded as quickly as Defendant expects, it is still very much ongoing. . . . The fact that []the regulatory process is not yet complete does not support any inference whatsoever that web-based services are not already covered by the ADA, or should not be covered by the ADA*.

(Statement of Interest of the United States, *National Association of the Deaf v. Netflix, Inc.*), at 11-12 (emphasis added). *See also New v. Lucky Brand Dungarees Stores, Inc.*, Statement of Interest of the United States, Case No. 14-CV-20574, at 7 (S.D. Fla.) (filed Apr. 10, 2014) ("[T]he Department has long considered websites to be covered by title III despite the fact that there are no specific technical requirements for websites currently in the regulations or ADA standards[.]"); Consent Decree, *Nat'l Fed. of the Blind, et al., United States of America v. HRB*

11

*Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO, ¶ 3 (D. Mass) (entered Mar. 25, 2014). *See also* Statement of Interest of the United States, *Juan Carlos Gil v. Winn-Dixie Stores, Inc.*, Civil Action No. 16-23020 (S.D. Fla.) (ECF #23) at 5 ("[T]he goods and services of a public accommodation provided via website are covered by the ADA.")

As the foundation for its due process claim, Defendant cites *United States v. AMC Entertainment, Inc.*, 549 F. 3d 768 (9th Cir. 2008). (Motion at 19.)  At issue in that case was ambiguity between the meaning of "lines of sight," which resulted in conflicting positions between district courts in different circuits. The DOJ eventually took a position in the form of an amicus brief in *Lara v. Cinemark USA, Inc.* after district courts had taken respective positions.  *Lara v. Cinemark USA, Inc.,* 1998 WL 1048497, at *2 (W.D. Tex.Aug. 21, 1998), *rev'd*, 207 F.3d 783 (5th Cir. 2000).  The DOJ then brought a lawsuit against AMC arguing AMC was required to *retrofit theaters, including those built <u>before the DOJ's amicus brief</u>* in *Lara*, which the Ninth Circuit reversed on due process grounds. *AMC Entertainment, Inc.*, 549 F. 3d. at 770. The *AMC* court found that as little as the filing of an amicus brief in separate litigation by the DOJ could provide adequate prospective notice of prohibited conduct. *Id*. at 770.  The court also observed that, "[d]ue process requires that the government provide citizens and other actors with sufficient notice as to what behavior complies with the law." *Id*. at 768.  Not at issue were the theatres built <u>after</u> the *Lara* amicus brief.

The distinction between *AMC* and 1-800 Flowers is that AMC did not have notice to satisfy due process for theaters built *before* the amicus brief, while 1-800 Flowers had notice of the ADA's basic mandate that commercial websites must be accessible to the disabled, since as early as 1996. Judge Otero's *Domino's* ruling stated, "the Court concludes that little or no deference is owed to statements made by the DOJ through documents filed in the course of litigation with regulated entities." (Order of 3/20/17 at 8; ECF #42.)  That is wrong.  In the published Ninth

Circuit decision, *M.R. v. Dreyfus,* the Ninth Circuit relied on the DOJ's Statement of Interest in an ADA case (involving Title II) as entitled to deference and "respect" and compared the Statement of Interest "to an amicus brief because of its interest in ensuring a proper interpretation and application of the [ADA] mandate." *Dreyfus,* 697 F.3d at 735. It added, "DOJ's interpretation is not only reasonable; it also better effectuates the purpose of the ADA 'to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities.'" Id. (citing 42 U.S.C. § 12101(b)(2)).

More recently, Judge Walter in *Hobby Lobby Stores, Inc.*, 2017 WL 2957736, Case No. 2:17-cv-01131-JFW-SK (June 15, 2017) (ECF #47), at 4 n.2, in a similar web access case stated, "Congress delegated authority to promulgate regulations to implement Title III to the DOJ. 42 U.S.C. § 12186(b). The DOJ also has authority to issue technical assistance for compliance with the ADA and to seek enforcement of its regulations in federal court. *See* 42 U.S.C. §§ 12186(b), 12188(b), 12206. *Accordingly, the DOJ's interpretations of the ADA are entitled to substantial deference.*" (citing *Auer v. Robbins*, 519 U.S. 452, 463 (1997); *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).) (emphasis added) The *Hobby Lobby* court also addressed this same *AMC* argument 1-800 Flowers advocates here:

> Defendant's argument that *AMC* requires the Court dismiss this case is unpersuasive because *AMC* is factually and procedurally distinguishable. The court in *AMC* was reviewing whether a district court's comprehensive remedial plan was appropriate, after the DOJ had prevailed on its motion for summary judgment. Id. at 762. The Court concludes the breadth and depth of analysis required at that stage of the proceedings is far different than the scope of review in this case because the Court cannot consider or weigh evidence at the motion to dismiss stage. *E.g., Target*, 452 F. Supp. 2d at 965. In addition, in *AMC*, the DOJ had promulgated specific regulations that required theater owners to provide wheelchair bound patrons in facilities with stadium seating with "lines of sight comparable to those for members of the public" and those regulations were ambiguous. 549 F.3d at 763. However, in this case, the DOJ's general website accessibility requirement is not ambiguous because the DOJ has not imposed any specific means by which entities must meet this requirement and facilities such as Hobby Lobby are free to decide how to comply with the ADA.

13

*Hobby Lobby* Order at 7. Other courts have reached the same conclusion. *See e.g. Gil v. Winn-Dixie Stores, Inc.*, No. CV 16-23020-CIV, 2017 WL 2547242, at *9 (S.D. Fla. June 12, 2017) (trial court decision finding inaccessible website violates the ADA following trial).

Companies like 1-800 Flowers that operate websites or mobile apps for the public are free to decide how to comply with the ADA since the DOJ has not imposed any specific compliance means. But just because there is flexibility in figuring out how to comply with the statute, that is an entirely different question from whether compliance is mandated in the first place. Accordingly, for due process purposes, the notice is whether 1-800 Flowers knew it had to comply with the ADA and not whether it knows how it must comply with the ADA.

### D. Plaintiff Has Stated A Claim For Relief Under The Unruh Act

It is well settled that a violation of Title III of the ADA is also a violation of California's state anti-discrimination law, the Unruh Act. Contrary to Defendant's arguments, Plaintiff need not allege intentional discrimination to state a claim under Unruh Act claim. (Motion at 18)

The intentional discrimination standard on which Defendant relies only applies if the Unruh Act claim is <u>not</u> premised on an ADA violation. *See Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 678 (2009) (holding that a plaintiff need not prove intentional discrimination to recover for an ADA violation under the Unruh Act). The Unruh Act provides that "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 [] shall also constitute a violation of this section." Cal Civ. Code § 51(f). (emphasis added). Plaintiff's Unruh Act claims specifically premised on the violation of rights under the ADA. (See Compl. ¶¶ 93, 101) ("Defendant is also violating the UCRA, Civil Code § 51 *et seq.* because the conduct alleged herein violates various provisions of the ADA, 42 U.S.C. § 12101 *et seq.*") But even if a potential ADA claim on which Plaintiff's Unruh Act is premised later becomes moot, the Unruh Act remedy for

14

damages still survives. *See v. De La Cruz,* 407 F. Supp. 2d 1126 at 1131 (C.D. Cal. 2005). Plaintiff also pled that "Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability … because Defendant has constructed a website [and mobile app] that are inaccessible to Plaintiff, Defendant maintains the website in an inaccessible form, and Defendant has failed to take actions to correct these barriers." (*See* Compl. ¶¶ 92, 100.)

### III. Conclusion

Defendant's motion to dismiss should be denied because the first-filed rule is inapplicable and Defendant's primary jurisdiction and due process arguments lack merit.

Dated: December 20, 2017

*Respectfully submitted,*
/s/ Javier L. Merino, Esq.
Javier L.Merino, Esq. (5294699)
DannLaw
1 Meadowlands Plaza, Suite 200
East Rutherford, NJ 07073
(201) 355-3440
(216) 373-0536 (fax)
jmerino@dannlaw.com
DisabilityNotices@dannlaw.com
Counsel of Record for Plaintiff
Kayla Reed

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2017, true and correct copies of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint were served on all counsel of record via U.S. and electronic mail.

/s/ Javier L. Merino, Esq.
Javier L. Merino, Esq.