UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

KAYLA REED,

Plaintiff,

-V-

1-800-FLOWERS.COM, INC.,

Defendant.

---------------------------------------------------------------x

Case No.: 2:17-cv-05713-ADS-GRB

**DEFENDANT 1-800-FLOWERS.COM, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

JACKSON LEWIS P.C.
44 S. Broadway, 14th Floor
White Plains, NY 10601
Tel: (914) 872-8060
Fax: (914) 946-1216

Joseph J. Lynett
Joseph J. DiPalma

*Attorneys for Defendant*
*1-800-FLOWERS.com, Inc.*

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 1

POINT I ........ 1

PLAINTIFF'S OPPOSITION PAPERS CONFIRM THAT THE FIRST FILED RULE APPLIES SQUARLY TO THIS CASE REQUIRING DISMISSAL OF THE ACTION. ........ 1

POINT II ........ 5

PLAINTIFF MISAPPREHENDS THE PRIMARY JURISDICTION DOCTRINE AND MISSTATES DEFENDANTS ARGUMENT THAT THE DOCTRINE WARRANTS DISMISSAL OF THE LAWSUIT. ........ 5

POINT III ........ 6

PLAINTIFF'S CYNCIAL ASSERTION THAT NO WEBSITE ACCESSIBILITY STANDARD EXISTS DEMONSTRATES WHY HOLDING 1-800 FLOWERS LIABLE FOR ALLEGEDLY HAVING AN INACCESSIBLE WEBSITE RESULTS IN A DUE PROCESS VIOLATION. ........ 6

POINT IV ........ 10

PLAINTIFF HAS FAILED TO OVERCOME DEFENDANT'S ARGUMENT THAT THE CALIFORNIA STATE UNRUH CLAIM SHOULD BE DISMISSED. ........ 10

CONCLUSION ........ 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andrea-Moses v. Hartford Fire Ins. Co.*,
No. 5:16-CV-1387, 2017 U.S. Dist. LEXIS 180420 (N.D.N.Y. Oct. 30, 2017) ....... 3

*Burkhart v. Washington Metropolitan Area Transit Authority*,
112 F.3d 1207, 1213 (D.C. Cir. 1997) ....... 9

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ....... 9

*Curtis v. Citibank, N.A.*,
226 F.3d 133 (2d Cir. 2000) ....... 3

*Ellis v. Tribune T.V. Company*,
443 F.3d 71 (2d Cir. 2006) ....... 5, 6

*Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*,
84 F.3d 91 (2d Cir. 1996) ....... 5

*Gathers, et al. v. 1-800-FLOWERS.com, Inc.*,
Case No. 17-cv-10273-IT (Filed Feb. 21, 2017) ....... *passim*

*Gen. Elec. Co. v. MV Nedlloyd*,
817 F.2d 1022 (2d Cir. 1987) ....... 5

*Golden Hill Paugussett Tribe of Indians v. Weicker*,
39 F.3d 51 (2d Cir. 1994) ....... 5

*Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.*,
No. 12-15807, 2014 U.S. App. LEXIS 2492 (9th Cir. Feb. 5, 2014) ....... 1

*Liberty Mut. Ins. Co. v. Fairbanks Co.*,
17 F. Supp. 3d 385, 393 (S.D.N.Y. 2014) ....... 3

*Nat'l Fed'n of the Blind v. Target Corp.*,
452 F. Supp. 2d 946 (N.D. Cal. 2006) ....... 4

*Robles v. Domino's Pizza LLC*,
No. 16-06599, 2017 U.S. Dist. LEXIS 53133 (C.D. Cal. Mar. 20, 2017) ....... 7, 8

*Spotless Enters. v. Accessory Corp.*,
415 F. Supp. 2d 203 (E.D.N.Y. 2006) ....... 1, 3

*United States v. AMC Entm't, Inc.*,
549 F.3d 760 (9th Cir. 2008) .......... 7, 8

*United States v. W. Pac. R.R. Co.*,
352 U.S. 59, 77 S. Ct. 161, 1 L. Ed. 2d 126 (1956) .......... 5

*William Gluckin & Co. v. Int'l Playtex Corp.*,
407 F.2d 177 (2d Cir. 1969) .......... 4

*Wyler-Wittenberg v. Metlife Home Loans, Inc.*,
899 F. Supp. 2d 235 (E.D.N.Y. 2012) .......... 4

**Statutes**

42 U.S.C. §12188 (a)(2) .......... 2

42 U.S.C. §12188(b) .......... 6

ADA .......... *passim*

Unruh Act .......... 2, 10

**Other Authorities**

28 C.F.R. app. § 35.160 .......... 10

28 CFR 36.303 .......... 9

28 CFR 36.502(b) .......... 6

Federal Rules of Civil Procedure Rule 12(b)(6) .......... 1

https://www.1800flowers.com (last accessed December 26, 2017) .......... 10

*Nondiscrimination on the Basis of Disability; Accessibility of Web Info. & Servs. of State & Local Gov't Entities & Pub. Accommodations*, 75 Fed. Reg. 43460, 43466 (July 26, 2010) .......... 9

**PRELIMINARY STATEMENT**

Defendant, 1-800-FLOWERS.com, Inc., (the "Defendant" or "1-800 Flowers"), respectfully submits this Reply Memorandum of Law in further support of its Motion to Dismiss Plaintiff's Complaint in its entirety. Plaintiff's opposition brief is an exercise in fiction concerning the allegations and the applicable law. As described in detail below, Plaintiff failed to rebut any one of the several bases Defendant established in its moving papers requiring dismissal of this lawsuit and, if anything, bolsters many of Defendant's arguments.

**ARGUMENT**

**POINT I**

**PLAINTIFF'S OPPOSITION PAPERS CONFIRM THAT THE FIRST FILED RULE APPLIES SQUARLY TO THIS CASE REQUIRING DISMISSAL OF THE ACTION.**

The first-filed rule is properly applied in this case because the claims and parties involved herein are substantially—if not *overwhelmingly*—similar to those of an action filed in the District of Massachusetts (*Gathers, et al. v. 1-800-FLOWERS.com, Inc.*, Case No. 17-cv-10273-IT (Filed Feb. 21, 2017) several months earlier. *See Spotless Enters. v. Accessory Corp.*, 415 F. Supp. 2d 203, 206 (E.D.N.Y. 2006)("the rule does not require identical parties in both cases, but merely requires 'substantial overlap.'").

The first-filed case, *Gathers*, is premised on the same claims that 1-800 Flowers—a defendant in both cases—operates a website which is in violation of Title III of the ADA. If both cases are ultimately decided on their merits, the disposition of each will substantially overlap in that different courts will be resolving identical Title III claims. The same legal standards under Title III will also resolve Plaintiff's Unruh Act claim, which is merely derivative of her Title III claim since Plaintiff concedes in her opposition that her Unruh claims are not based on intentional discrimination. *Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.*, No. 12-15807, 2014 U.S. App. LEXIS 2492, at *22

(9th Cir. Feb. 5, 2014). Accordingly, there exists substantial overlap between the parties and claims warranting application of the first-filed rule.

The purported differences Plaintiff sets forth in her brief are entirely irrelevant to the central issue in both cases against Defendant: Whether 1-800 Flowers' website, www.1800flowers.com (the "Website"), violates Title III of the ADA. First, the fact that the cases involve different plaintiffs, and *Gathers* involves additional co-defendants, has no bearing on the question of whether the Website violates the ADA. Second, the difference of "more than six months" between the alleged access attempts by the two visually-impaired plaintiffs can have no operation on the outcome of either case because the court is limited under Title III to ordering *prospective* injunctive relief. 42 U.S.C. §12188 (a)(2). In other words, because the court can only order 1-800 Flowers to modify its website going forward, the relevant time period in both cases is the future, not the past. In any event, it is an exercise in fiction for Plaintiff to assert that the cases involve different time periods. The Title III violation alleged in the Complaint is within the same time period that the Plaintiff in *Gathers* alleged the Defendant's website was inaccessible in violation of Title III. Further, the fact that "the plaintiffs in the Massachusetts suit did not raise any state law claims or seek actual damages" is also insufficient to destroy the "substantial similarity" between the cases. Plaintiff's Brief in Opp., p. 4 (ECF No. 15). As Plaintiff admits, her Unruh Act claims "aris[e] out of the same transaction or occurrence as her federal claim." Plaintiff's Brief in Opp., p. 5. Accordingly, these claims do not require separate fact-finding. Moreover, because Plaintiff admits she has not pled intentional discrimination, her Unruh Act claims can *only* succeed if the Website is found to be in violation of Title III of the ADA as 1-800 Flowers pointed out in initial moving brief. Therefore, both lawsuits against the Defendant herein allege common violations of law against the same Defendant and Website, which is "the essential question" in a determination of whether the first-filed rule should be applied. *See Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 393 (S.D.N.Y. 2014).

Further, even if the differences mentioned by Plaintiff *were* relevant, they are woefully insufficient to prevent application of the first-filed rule. Despite Plaintiff's attempts to mislead the court with incomplete paraphrasing of the controlling precedent, her statement of the applicable rule is simply incorrect. The first filed rule has been expanded significantly since 1978, the year of the single case Plaintiff relies upon in her brief. *See, e.g.*, *Andrea-Moses v. Hartford Fire Ins. Co.*, No. 5:16-CV-1387 (BKS/DEP), 2017 U.S. Dist. LEXIS 180420, at **7-8 (N.D.N.Y. Oct. 30, 2017) (acknowledging that the first-filed rule "has been extended to encompass other scenarios and has been applied to class action suits filed by different plaintiff classes against the same defendant.").

Indeed, as discussed in Defendant's Memorandum of Law (ECF No. 14-5), the first-filed rule is **not** limited to situations involving "essentially the same lawsuits," as Plaintiff would have this Court believe. On the contrary, as this Court has recognized, "the rule does not require identical parties in both cases, but merely requires 'substantial overlap.'" *Spotless Enters. v. Accessory Corp.*, 415 F. Supp. 2d 203, 206 (E.D.N.Y. 2006) (internal citation omitted). Likewise, Plaintiff's paraphrasing of *Liberty Mutual* regarding "the classic application of the rule" omits the court's acknowledgment that "the existence of non-overlapping claims or parties **does not** disqualify lawsuits from the first-filed rule." 17 F. Supp. 3d. at 392 (emphasis added). Therefore, that the parties and claims involved in both cases are not *completely* identical is not enough to deprive this Court of its discretion to dismiss the instant case under the first-filed rule. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (recognizing the district courts' discretion to "dismiss a suit that is duplicative of another federal court suit."). Next, Plaintiff did not oppose the argument that Plaintiff's Title III claims based on Defendant's allegedly inaccessible mobile application should be dismissed because the DOJ has never offered any guidance establishing that mobile applications are covered by Title III, let alone offered an accessibility requirement. *See* Defendant's Memorandum of Law in Support of its Motion to

Dismiss, p. 15 (ECF No. 14-5). Accordingly, the claim concerning the mobile application does not prevent the Court from applying the first filed rule.

Plaintiff claims that "special circumstances" exist which "mitigate" against applying the first-filed rule because there is a motion to dismiss pending in *Gathers*. This claim flies in the face of controlling law. "Special circumstances" has a specific and a very limited application for a court to consider when departing from the first filed rule: where the first lawsuit was an improper anticipatory lawsuit or the result of forum shopping. *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969); *Wyler-Wittenberg v. Metlife Home Loans, Inc.*, 899 F. Supp. 2d 235, 246 (E.D.N.Y. 2012). None of these circumstances obviously are present here and the first-filed rule should doom Plaintiff's lawsuit. In any event, the pending motion to dismiss in *Gathers* increases the likelihood of potentially conflicting decisions from different federal district courts concerning essentially the same dispute.

The only unusual circumstances here have been created by Plaintiff. Plaintiff's only apparent connection to New York is the lawsuits she has filed here. The lawsuit involves events that only allegedly occurred in California. Plaintiff has had her day in court many times in both California state court and New York federal court concerning website accessibility claims. A list of cases filed on Plaintiff's behalf in these courts is annexed to the accompanying Declaration of Joseph J. Lynett, Esq. in Further Support of Defendant's Motion to Dismiss. The only evident reason Plaintiff even filed suit in this District is to forum-shop (or at least to avoid case law in California which dooms all of her claims). Plaintiff allegation that she wanted to transact business with 1-800 Flowers through its Website only would doom her claims under *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006), since there is no alleged "nexus" between the Website and a physical store she wanted to use. See Compl. ¶¶ 42-44 (ECF No. 10).

Therefore, Defendant respectfully urges this court to apply the first filed rule and dismiss this case in its entirety.

**POINT II**

**PLAINTIFF MISAPPREHENDS THE PRIMARY JURISDICTION DOCTRINE AND MISSTATES DEFENDANTS ARGUMENT THAT THE DOCTRINE WARRANTS DISMISSAL OF THE LAWSUIT.**

The doctrine of primary jurisdiction is concerned with "promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63, 77 S. Ct. 161, 1 L. Ed. 2d 126 (1956). The doctrine's central aim is to allocate initial decision-making responsibility between courts and agencies and to ensure that they "do not work at cross-purposes." *Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 97 (2d Cir. 1996). "Whether there should be judicial forbearance hinges therefore on the authority Congress delegated to the agency in the legislative scheme." *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 59 (2d Cir. 1994) (citing *Ricci v. Chi. Mercantile Exch.*, 409 U.S. 289, 304, 93 S. Ct. 573, 34 L. Ed. 2d 525 (1973)); *see also Gen. Elec. Co. v. MV Nedlloyd*, 817 F.2d 1022, 1026 (2d Cir. 1987) (noting that the doctrine applies "when Congress has entrusted the regulation of certain subject matter under a statute to an administrative agency"). Recourse to the doctrine of primary jurisdiction is thus appropriate "whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956).

While this Court and the Department of Justice ("DOJ") have jurisdiction over ADA Title III claims, Plaintiff misapplies the requisite factors mandated by *Ellis v. Tribune Television Company*, 443 F.3d 71, 82-83 (2d Cir. 2006). First, contrary to Plaintiff's assertions, Defendant's primary jurisdiction argument is not premised on the imminence of DOJ action in area of website accessibility. Further, controlling law from the Second Circuit holds that an agency's inordinate delay in exercising its authority is an insufficient reason for a Court to withhold applying the primary jurisdiction doctrine. *See id.* at 90. Defendant's argument is based upon the fact that the DOJ possesses expertise in

developing website accessibility standards. Courts, conversely, do not possess the same level of knowledge and expertise as the DOJ in developing technical accessibility standards. This argument is well-grounded in the apposite and controlling case law cited and reviewed above entrusting the regulation of website accessibility standards to the DOJ. Plaintiff's opposition brief fails to address this basic point which 1-800 Flowers contends requires the application of the primary jurisdiction to dismiss this lawsuit.

In addition, contrary to Plaintiff's assertions, a conflict still exists even though the website regulations have been put on an "Inactive Actions" agenda by the DOJ. The DOJ is still charged with enforcing Title III. *See* 42 U.S.C. §12188(b); 28 C.F.R. 36.502(b). Therefore, a Court's decision concerning website accessibility requirements under Title III could conflict with current and future DOJ enforcement efforts. Related to this, and again contrary to Plaintiff's assertions in her opposition brief, she does in fact have available administrative remedies at the DOJ. The DOJ is mandated by statute to investigate alleged violations of Title III requested by any individual who believes she has been subject to discrimination and to initiate a compliance review. *See* 28 C.F.R. 36.502(b)(c). Thus, the allegations set forth in Plaintiff's Complaint could have been filed with the DOJ in the first instance for what would almost certainly be a quicker disposition. This is a more logical and direct approach to resolve Plaintiff's Complaint because the DOJ has the requisite knowledge and expertise to address Plaintiff's claims and costs the Plaintiff nothing in bringing her complaint to the federal agency mandated by law to enforce Title III.

## POINT III

## PLAINTIFF'S CYNCIAL ASSERTION THAT NO WEBSITE ACCESSIBILITY STANDARD EXISTS DEMONSTRATES WHY HOLDING 1-800 FLOWERS LIABLE FOR ALLEGEDLY HAVING AN INACCESSIBLE WEBSITE RESULTS IN A DUE PROCESS VIOLATION.

Plaintiff asks this Court to find 1-800 Flowers liable for violating the ADA by failing to maintain the Website in accordance with an accessibility standard that does not exist and to enter

an injunction requiring 1-800 Flowers to retain a website accessibility consultant acceptable to Plaintiff to bring the Website into conformance with an unspecified accessibility standard. "This request flies in the face of due process." *Robles v. Domino's Pizza LLC*, No. 16-06599, 2017 U.S. Dist. LEXIS 53133, at *17 (C.D. Cal. Mar. 20, 2017). "Due process requires that the government provide citizens and other actors with sufficient notice as to what behavior complies with the law." *United States v. AMC Entm't, Inc.*, 549 F.3d 760, 768 (9th Cir. 2008). "Liberty depends on no less: '[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.'" *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (emphasis added)). "Put more colloquially, those regulated by an administrative agency are entitled to know the rules by which the game will be played." *Id.* (internal quotation marks omitted) (emphasis added).

In our initial brief supporting the motion to dismiss based on a due process violation, 1-800 Flowers cited to the Ninth Circuit's decision in *AMC*. *See* Plaintiff's Brief in Opp., p. 12 (ECF No. 15). In *Robles* the Court applied *AMC* to reach the conclusion that defendant's due process rights would be violated if they were forced to bring their website into compliance with the WCAG 2.0 Guidelines "without specifying a particular level of success criteria and without the DOJ offering meaningful guidance on this topic." 2017 U.S. Dist. LEXIS 53133, at *17.

Plaintiff attempts to distinguish *AMC* from this case by arguing that unlike the Defendant *AM*C, 1-800 Flowers had notice of the applicable accessibility standard. Plaintiff's Brief in Opp., p. 12 (ECF No. 15). Plaintiff's attempt to distinguish *AMC* is a futile effort and tries to distract from what is obvious—1-800 Flowers has no notice of an accessibility standard because the DOJ has not offered official guidance concerning such a standard. At most the DOJ has stated that covered entities are generally required to provide auxiliary aids and services to make their websites accessible (which Defendant already provides). *AMC* is squarely on point. The holding in *AMC* is

based on the finding that the DOJ did not provide an official interpretation of the applicable accessibility standard—in that case the line of sight requirements for auditoriums—until after some of AMC's theaters were constructed, which did not satisfy the standard. Thus, the Ninth Circuit held that to enforce the standard against those theatres constituted a due process violation because AMC could not reasonably have known of the DOJ's interpretation of the accessibility standard. Like the Defendant in *AMC*, since the DOJ had not offered an official interpretation of an applicable website accessibility standard, which Plaintiff here seeks to enforce, 1-800 Flowers cannot reasonably know the standard that the DOJ has never provided. Indeed, the result in *AMC* should follow all the more forcefully here because, unlike *AMC*, the DOJ has never provided an official interpretation of the accessibility requirement at issue. *See Robles* 2017 U.S. Dist. LEXIS 53133,, at *17. Further, unlike *AMC*, the DOJ was interpreting the accessibility standard required by an existing specific regulation. *United States v. AMC Entm't, Inc.*, 549 F.3d 760,763 (9th Cir. 2008). Here, it is undisputed that there is no regulation concerning website accessibility on which the DOJ has offered its interpretation. In short, 1-800 Flowers can hardly be faulted for not knowing the required accessibility standard for its Website, when the DOJ, since issuing the Advance Notice of Proposed Rulemaking ("ANPRM") in 2010 still has not figured out the requirement and "the rules by which the game will be played." *Id.* at 768. Plaintiff's concession that the DOJ has not imposed a means to comply with Title III does nothing to support Plaintiff's claims and actually demonstrates why holding 1-800 Flowers liable for violating Title III's – if there is no imposed means to comply, then any means to comply invented by a Plaintiff, but not chosen by the covered entity, can violate Title III. Plaintiff's Brief in Opp., p. 14 (ECF No. 15)

Plaintiff's cynical efforts to use the judicial system in pressing her website accessibility claims are all the more evident in light of the 1-800 Flowers provision of a 24/7 staffed telephone line for all customers, both disabled and non-disabled, to call to obtain the same information and make

the same transactions as offered on the Website. Title III's implementing regulations define "auxiliary aids and services" to include "voice, text, and video-based telecommunications products and systems, including text telephones (TTYs), videophones, and captioned telephones, or equally effective telecommunications devices . . . ." 28 C.F.R. § 36.303 (b)(1). 1-800 Flowers makes the information on its Website accessible by providing a ready method of access through a staffed telephone line to those who have visual impairments. On July 26, 2010—over seven years ago— the DOJ published the ANPRM to set standards for covered entitles under Titles II and III of the ADA concerning website accessibility. Even then the DOJ indicated that staffed telephone lines are appropriate auxiliary aids and serve to make the services of the website accessible to vision-impaired persons. *See Nondiscrimination on the Basis of Disability; Accessibility of Web Info. & Servs. of State & Local Gov't Entities & Pub. Accommodations*, 75 Fed. Reg. 43460, 43466 (July 26, 2010). Plaintiff did not, and cannot, successfully oppose Defendant's argument that it provides appropriate auxiliary aids and services by staffing 24/7 telephone lines to provide any information and transaction that can be obtained from the Website. A cursory review of the Website makes this clear. *See* Exhibit C annexed to Lynett Declaration (ECF No. 14-4); *see also* 28 C.F.R. 36.303. The Court can consider the information on the Website at the motion to dismiss stage because it is "either in Plaintiffs' possession or of which plaintiff has known and relies on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Plaintiff obviously relied on the information contained in the 1-800 Flowers' Website in bringing her claims. Accordingly, the Court can consider information concerning 1-800 Flowers' 24/7 staffed telephone lines located on the Website.

While covered entities under Title III are required to provide appropriate auxiliary aids and services to facilitate effective communication, as the D.C. Circuit Court of Appeals stated in *Burkhart v. Washington Metropolitan Area Transit Authority*, "[n]othing in the ADA itself or its implementing regulations dictates that a disabled individual must be provided with the type of auxiliary

aid or service he requests unless it would alter the service provided or create an unreasonable burden or expense." 112 F.3d 1207, 1213 (D.C. Cir. 1997). In addition, "the Attorney General's section-by-section analysis of this provision recognizes that the individual's request need not be honored if 'another effective means of communications exists.'" 28 C.F.R. app. § 35.160. While 'deference to the request of the individual is desirable,' it is by no means required." *Id.*

Every page of the Website contains a telephone number for individuals to call at any time who have any questions or want information. *See* 1-800 Flowers, https://www.1800flowers.com (last visited Dec. 29, 2017). Indeed, the telephone number to access Defendant's services is expressly contained within the title of the Website itself; simply dial 1-800-Flowers (numeric equivalent 1-800-356-9377). Moreover, it should be obvious that the staffed telephone number can be located through a simple Google search or other similar search engine.

## POINT IV

## PLAINTIFF HAS FAILED TO OVERCOME DEFENDANT'S ARGUMENT THAT THE CALIFORNIA STATE UNRUH CLAIM SHOULD BE DISMISSED.

Plaintiff admits that her Unruh claim depends solely on establishing a Title III violation. Plaintiff's Brief in Opp., p. 14 (ECF No. 15). Here, because the Plaintiff's ADA claims should be dismissed for the reasons set forth above, Plaintiff's Unruh claim must also be dismissed.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety, and grant such further relief as this Court deems just and proper.

Dated: December 29, 2017
White Plains, New York

Respectfully submitted,

JACKSON LEWIS P.C.
44 South Broadway, 14th Floor
White Plains, New York 10601
914-872-8060

By: *<u>/s/ Joseph J. Lynett</u>*
Joseph J. Lynett
*<u>/s/ Joseph J. DiPalma</u>*
Joseph J. DiPalma
*Attorneys for the Defendant*
*1-800-FLOWERS.com, Inc.*