FILED
CLERK
9:25 am, Aug 24, 2018
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
KAYLA REED,

                          Plaintiff,       **MEMORANDUM OF**
                                            **DECISION & ORDER**
                    -against-         2:17-cv-05713 (ADS)(AYS)

1-800-FLOWERS.COM, INC.,

                          Defendant.
---------------------------------------------------------X

**APPEARANCES:**

**Dann & Merino, P.C.**
*Counsel for the Plaintiff*
1 Meadowlands Plaza, Suite 200
East Rutherford, NJ 07073
      By:    Marc E. Dann, Esq.
                Javier L. Merino, Of Counsel.

**Jackson Lewis P.C.**
*Counsel for the Defendant*
44 S. Broadway, 14th Floor
White Plains, NY 10601
      By:    Joseph J. Lynett, Esq.
                Joseph J. DiPalma. Of Counsel.

**SPATT, District Judge**:

       The plaintiff Kayla Reed (the "Plaintiff") brought this disability discrimination case against the defendant 1-800 Flowers.com, Inc. (the "Defendant"), alleging that the Defendant violated Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("ADA") and the Unruh Civil Rights Act, California Civil Code § 51, *et seq.* (the "UCRA").

       Presently before the Court is a motion by the Defendant, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6), seeking to dismiss the Complaint for failure to state a claim upon which relief may be granted.

1

For the following reasons, the Court denies the Defendant's Motion to Dismiss in its entirety.

## I. BACKGROUND

The Plaintiff is a blind or visually-impaired resident of California, County of Ventura. Compl. ¶ 11. The Plaintiff cannot use a computer or access the internet without assistance. *Id.* ¶ 32. However, the Plaintiff is a regular and proficient user of screen-reading software programs that allow her to access online content found on websites and mobile applications. *Id.* ¶¶ 33–35. These programs work by vocalizing the visual information on a computer screen. After hearing the vocalization, the user can then perform their desired function via a keyboard. *Id.* ¶ 16. This process relies on rendering the information on a website into meaningful text. *Id.* ¶ 20. According to the Complaint, screen-reading technology provides the only means for blind or visually-impaired persons to fully and independently access the internet, websites and other digital content. *Id.* ¶ 21. Therefore, the Plaintiff alleges, if a screen-reading program cannot render the images on a website into text, blind or visually-impaired users cannot access the same content available to sighted users, because they cannot see the screen or manipulate a mouse in the same manner as a sighted person. *Id.* ¶ 20.

The Defendant is a national specialty florist and retailer with its headquarters in Carle Place, New York. *Id.* ¶ 12. The Defendant offers consumers floral related goods and services through its website, 1800flowers.com, and its mobile application. *Id.* ¶¶ 13, 27. Through these platforms, customers of the Defendant may, among other things, enter online orders; locate physical stores; browse products; find information about products; learn about sales, coupons, offers and discount codes; and purchase gift cards. *Id.* ¶ 29.

According to the Plaintiff, the Defendant denied her equal access to the goods, services, and benefits offered to the public through 1800flowers.com and its mobile application because of her blindness. Specifically, the Plaintiff made several separate visits to the Defendant's website and mobile application and, each time, encountered multiple accessibility barriers that made her screen-reading programs ineffective. *Id.* ¶¶ 36–43. Therefore, the Plaintiff alleges that the Defendant discriminated against her by constructing a website and a mobile application that are inaccessible to visually-impaired individuals, and failing to take actions to correct these access barriers in the face of substantial harm and discrimination to those individuals. *Id.* ¶¶ 44–52.

On these facts, the Plaintiff brought a cause of action before the Court under Title III of the ADA, and the UCRA. She seeks a declaratory judgment that the Defendant violated these statutes; injunctive relief against the Defendant stemming from these alleged violations; an award of attorney's fees, costs, and litigation expenses; compensatory damages; and prejudgment interest. *Id.* ¶¶ 59–104.

As for the injunctive relief, the Plaintiff seeks a permanent injunction requiring the Defendant to retain a qualified consultant acceptable to the Plaintiff ("Agreed Upon Consultant") to make an ADA-compliant website for the Defendant. *Id.* ¶ 54. The Plaintiff further requests that this injunction require the Defendant to cooperate with the Agreed Upon Consultant to: (1) train the Defendant's employees and agents who develop the 1800flowers.com website and mobile application on accessibility and compliance with the ADA; (2) regularly check the accessibility of the Defendant's website and mobile application to maintain accessibility as required by the ADA; (3) regularly test end-user accessibility of the websites by screen-reader users to ensure that the Defendant's website and mobile application are accessible to blind and visually-impaired individuals who would access them with screen-reading technology; and (4) develop an

3

accessibility policy that is clearly disclosed on its website and mobile application, with contact information for users to report accessibility-related problems and obtain meaningful resolution after the Defendant has investigated and identified the accessibility-related problem. *Id.* ¶ 55.

On December 6, 2017, the Defendant moved under Rule 12(b)(6) to dismiss the Complaint, contending that the Plaintiff's allegations, even if taken as true, fail to plausibly state a claim upon which relief can be granted.

## II. DISCUSSION

**A. LEGAL STANDARD FOR A MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

4

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L.Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

### B. TITLE III OF THE ADA

Although the Defendant does not directly challenge the merits of the Plaintiff's discrimination claims, the Motion to Dismiss implicates the overall regulatory framework of Title III of the ADA, and the UCRA. Consequently, the Court will briefly lay out the statutory scheme underlying the Plaintiff's claims before turning to the substance of the motion.

Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). In order to comply with that mandate, public accommodations must provide "reasonable modifications" or "auxiliary aids and services" to disabled individuals. *Id.* §§ 12182(b)(2)(A)(ii)–(iii). However, a public accommodation need not provide modifications or auxiliary aids or services if those modifications are unreasonable or "would fundamentally alter the nature" of the good, service, or accommodation, or if providing auxiliary aids or services "would fundamentally alter the nature of the good, service . . . or accommodation or would result in an undue burden." *Id.*

Further, the UCRA provides that "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 [] shall also constitute a violation of this section." Cal Civ. Code § 51(f). Here, the Plaintiff predicates her UCRA claim on her Title III claim, so that

the same analytical framework applies to both statutes. *Lentini v. Cal. Center for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004).

When enacting the ADA, Congress charged the Department of Justice ("DOJ") with issuing regulations under Title III, 42 U.S.C. § 12186(b), rendering technical assistance, *id.* § 12206(c), and enforcing Title III in court, *id.* § 12188(b). Specifically, it tasked the DOJ with "providing guidance and technical expertise to develop standards that public accommodations must comply with under the ADA." *Access Now, Inc. v. Blue Apron, LLC*, No. 17-cv-116, 2017 WL 5186354, at *8 (D.N.H. Nov. 8, 2017). Pursuant to that authority, the DOJ promulgated regulations laying out the technical structural requirements for many places of public accommodation. *See* Dep't of Justice, *2010 ADA Standards for Accessible Design*, (Sept. 15, 2010) http://www.ada.gov/regs2010/2010ADAStandards/2010ADAstandards.htm ("ADAAG"). For example, the DOJ set out particularized guidelines for technologies such as automated teller machines and elevator keypads, among other matters. *See, e.g.*, *id.* §§ 220, 407.

To date, the DOJ has not yet issued regulations setting forth the specific accessibility requirements imposed upon websites by Title III. In 2010, the agency issued an Advance Notice of Proposed Rulemaking ("ANPRM") stating that it was "considering revising the regulations implementing title III of the [ADA] in order to establish requirements for making the goods, services, facilities, privileges, accommodations, or advantages offered by public accommodations via the Internet, specifically at sites on the World Wide Web (Web), accessible to individuals with disabilities." Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations, 75 Fed. Reg. 43460–01, 43460 (July 26, 2010). No rule or regulation emerged from the ANPRM. After seven years without movement, the DOJ, on July 21, 2017, listed the project as "inactive." *See* Office of

Information and Regulatory Affairs, *Inactive RINs: 2017 Agenda Update*, https://www.reginfo.gov/public/jsp/eAgenda/InactiveRINs_2017_Agenda_Update.pdf.

**C. THE FIRST-FILED DOCTRINE**

The Defendant begins its motion by arguing that this case should be dismissed due to the existence of a similar case pending against it in the District of Massachusetts. *See Gathers v. 1-800-FLOWERS.com, Inc.*, No. 17-cv-10273 (D. Mass.) ("*Gathers*"). The plaintiffs in *Gathers* filed their case months before the Plaintiff brought the Complaint, and the Defendant alleges that the "first-filed" rule, a doctrine designed to avoid duplicative litigation and the potential for conflicting outcomes in two federal district courts, applies. However, the District of Massachusetts dismissed *Gathers* with prejudice, so that the Court finds this argument to be moot.

The first-filed rule is a "well-settled legal doctrine, instructing that 'where there are two [or more] competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." *Wyler-Wittenberg. v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 243 (E.D.N.Y. 2012) (Spatt, J.) (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989)). "The 'first-filed' rule enables courts to prevent 'duplicative litigation by adhering to the inherently fair concept that the party who commenced the first suit should generally be the party to attain its choice of venue.'" *Id.* at 244 (quoting *Ontel Products, Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D.N.Y.1995)).

The rule does not provide "an invariable mandate." *Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008). Instead, it creates a presumption in favor of proceeding in the forum where the first complaint was filed. *Id.* It is not meant to be applied in a "rigid or mechanical way, and is quite commonly overcome where circumstances warrant."

*Dornoch Ltd. ex rel. Underwriting Members of Lloyd's Syndicate 1209 v. PBM Holdings, Inc.*, 666 F.Supp.2d 366, 369 (S.D.N.Y.2009) (citing *Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir. 1986)). "Whether to apply the first-to-file rule is ultimately an equitable task within the sound discretion of the district court." *AEI Life, LLC v. Lincoln Ben. Life Co.*, 305 F.R.D. 37, 44 (E.D.N.Y. 2015).

Here, the Court declines to apply the first-filed rule for a basic reason – there are no longer competing lawsuits. When the first-filed lawsuit is dismissed, it cannot take priority over the second-filed lawsuit, because "dismissed actions . . . do not constitute currently pending claims under the final judgment rule." *Id.*; *see also Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 628 (7th Cir. 1995) (holding that once a claim was dismissed by an Illinois court, a Rhode Island court was free to address the merits of that claim "without risk of duplicative litigation"); *Somasekharan v. Lawrence & Assocs., Inc.*, No. 07-cv-2087, 2007 WL 2680954, at *3 (C.D. Ill. July 13, 2007) (finding that dismissed actions are not considered currently pending claims under the first-to-file rule), *report and recommendation adopted*, 2007 WL 2685154 (C.D. Ill. Aug. 1, 2007). Here, the parties in *Gathers* stipulated to dismissal with prejudice pursuant to Rule 41(a)(1)(ii), and the District of Massachusetts closed the case. Therefore, the parties can proceed with this case without the risk of duplicative litigation. *See Gathers*, Dkt. 50.

As such, the Court declines to dismiss the case pursuant to the first-filed doctrine.

**D. PRIMARY JURISDICTION**

Primary jurisdiction is a "discretionary doctrine . . . used to fix forum priority when the courts and an administrative agency have concurrent jurisdiction over an issue." *Mrs. W. v. Tirozzi*, 832 F.2d 748, 758–59 (2d Cir. 1987) (citing *Far E. Conference v. United States*, 342 U.S. 570, 574–75, 72 S.Ct. 492, 96 L.Ed. 576 (1952)). The doctrine aims "to allocate initial decisionmaking

8

responsibility between courts and agencies" so as "to ensure that they 'do not work at cross-purposes.'" *Ellis v. Tribune TV Co.*, 443 F.3d 71, 81 (2d Cir. 2006); (quoting *Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 97 (2d Cir. 1996)).

While "[n]o fixed formula has been established" with respect to its application, *Nat'l Communs. Ass'n v. AT & T*, 46 F.3d 220, 223 (2d Cir. 1995), courts generally defer to agencies' primary jurisdiction when faced with "matters outside the 'conventional experience of judges' or those that 'fall within the realm of administrative discretion' to administrative agencies with more specialized experience, expertise, and insight." *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 74 (E.D.N.Y. 2015) (quoting *Nat'l Communs. Ass'n*, 46 F.3d at 222–23). Thus, "[p]rimary jurisdiction applies where a claim is originally cognizable in the courts, but enforcement of the claim requires, or is materially aided by, the resolution of threshold issues, usually of a factual nature, which are placed within the special competence of the administrative body." *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58–59 (2d Cir. 1994).

The rationale for the doctrine is two-fold. First, it ensures "consistency and uniformity in the regulation of an area which Congress has entrusted to a federal agency." *Id.* at 59. Second, the doctrine recognizes that, in some cases, the expertise and specialized knowledge of administrative agencies should be ascertained before judicial consideration of the legal claim. *Belfiore*, 311 F.R.D. at 74.

To advance these goals, courts in the Second Circuit generally apply four factors when determining whether to exercise their discretion to abstain in deference to the agencies decision-making:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;

9

(2) whether the question at issue is particularly within the agency's discretion;

(3) whether there exists a substantial danger of inconsistent rulings; and

(4) whether a prior application to the agency has been made.

*Ellis*, 443 F.3d at 82–83. Further, courts must also consider "the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Id.* at 83

The doctrine only applies in a "relatively narrow" set of circumstances. *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir. 1988) (citation omitted) ("applied only when a lawsuit raises an issue, frequently the validity of a commercial rate or practice, committed by Congress in the first instance to an agency's determination, particularly when the issue involves technical questions of fact uniquely within the expertise and experience of an agency"). Courts seldom defer to an administrative agency where the issue is "legal in nature and lies within the traditional realm of judicial competence." *Id.*; *Tirozzi*, 832 F.2d at 759.

With all of this in mind, the Court finds primary jurisdiction abstention inappropriate here. At its core, this case involves a legal dispute: "whether a particular defendant has violated the ADA's prohibition against disability-based discrimination. This includes a determination of 'the extent to which accommodations are required under the ADA and when such accommodations constitute an undue burden on a [particular defendant].'" *Nat'l Ass'n of the Deaf v. Harvard Univ.*, No. 3:15-cv-30023, 2016 WL 3561622, at *15 (D. Mass. Feb. 9, 2016) (quoting *Arizona ex rel. Goddard v. Harkins Admin. Servs.*, Inc., No. 07-cv-703, 2011 WL 13202686, at *2 (D. Ariz. Feb. 8, 2011)), *report and recommendation adopted*, 2016 WL 6540446 (D. Mass. Nov. 3, 2016).

These determinations remain within the core competency of the judiciary, regardless of the DOJ's involvement in issuing guidance on accessibility. *See Andrews v. Blick Art Materials, LLC*,

268 F. Supp. 3d 381, 401–02 (E.D.N.Y. 2017) (finding that, with regards to the application of Title III to commercial websites ,"[a]nalyzing the text of the ADA and its regulations and deciding whether a business is in compliance with those laws is a task well within the competence of the judicial branch"); *Del-Orden v. Bonobos, Inc.*, No. 17-cv-2744, 2017 WL 6547902, at *14 (S.D.N.Y. Dec. 20, 2017) (explaining that application of Title III to commercial websites "does not involve technical or policy considerations within the agency's particular field of expertise but instead simply requires the Court to engage in an activity—statutory interpretation[—]that is the daily fare of federal judges"); *see also MB v. Islip Sch. Dist.*, No. 14-cv-4670 (SJF) (GRB), 2015 WL 3756875, at *12 (E.D.N.Y. June 16, 2015) (finding that resolution of ADA claims "depend upon the interpretation of those statutes, and thus do not involve technical or policy considerations within the Commissioner's particular field of expertise but rather are within the conventional wisdom of this Court").

The Defendant argues that matters concerning website accessibility fall exclusively within the DOJ's discretion because the DOJ "determined that these issues were for the agency to develop and resolve and not the courts." Mot. to Dismiss at 13. This argument is misplaced. The relevant inquiry is not whether the agency finds a particular question within its discretion, but rather whether Congress deems it so. While Congress may have tasked the DOJ with providing guidance and technical expertise to develop standards that public accommodations must comply with under the ADA, it did not charge the DOJ with determining whether a defendant's actions, or lack thereof, violate the ADA. *Access Now, Inc.*, 2017 WL 5186354, at *8. Further, the Plaintiff in this case seeks declaratory and injunctive relief against the Defendant. "DOJ has the power to provide neither. Rather, DOJ, like Plaintiff[], must turn to the courts for enforcement." *Nat'l Ass'n of the*

*Deaf*, 2016 WL 3561622, at *15 (citing 42 U.S.C. § 12186(b)(1)(B)). As a result, the Plaintiff's claims do not touch upon a subject matter lying at the heart of the DOJ's discretion.

Bolstering this conclusion, the DOJ's role in implementing Title III does not involve "technical questions of fact uniquely within the expertise and experience of an agency," such as determining "the validity of a commercial rate or practice." *Goya Foods, Inc.*, 846 F.2d at 851; *see also Tassy v. Brunswick Hosp. Ctr., Inc.*, 296 F.3d 65, 69 (2d Cir. 2002) ("The concern for consistency and uniformity is more prevalent in cases involving issues of broad applicability such as the reasonableness of rates or tariffs."). "The DOJ does not have special technical expertise in the areas of website coding or assistive technology." *Access Now, Inc.*, 2017 WL 5186354, at *8; *Nat'l Ass'n of the Deaf*, 2016 WL 3561622, at *17 ("[T]here is no inherent reason for concluding that DOJ has any specialized technical expertise regarding internet accessibility"). To the contrary, when issuing the ANPRM, the DOJ specifically sought "input from experts in the field of computer science, programming, networking, assistive technology, and other related fields" given the "complexity" of the issue. ANPRM at 43464.

The Defendant is correct that the DOJ may possess relevant experience in setting standards for accessibility under the ADA. However, it is not the case that the agency possesses a particular expertise that federal courts lack. Indeed, courts regularly find themselves capable of making accessibility determinations under the ADA in a wide variety of contexts, including cases brought by blind or visually impaired persons against operators of commercial websites. *See, e.g.*, *Andrews*, 268 F. Supp. 3d at 403; *Del-Orden*, 2017 WL 6547902, at *14; *Robles v. Yum! Brands, Inc.*, No. 2:16-cv-8211, 2018 WL 566781, at *7 (C.D. Cal. Jan. 24, 2018); *Access Now, Inc.*, 2017 WL 5186354, at *8; *Reed v. CVS Pharmacy, Inc.*, No. 17-cv-3877, 2017 WL 4457508, at *6 (C.D. Cal.

Oct. 3, 2017); *Gorecki v. Hobby Lobby Stores, Inc.*, No. 17-cv-1131, 2017 WL 2957736, at *7 (C.D. Cal. June 15, 2017).

This is not to say that any relevant technical guidance provided by the DOJ would not be entitled to some form of deference. However, the case for deference is particularly limited where no such guidance exists. Apparently, DOJ has not yet promulgated regulations related to website accessibility under the ADA. In fact, the DOJ listed the only overture it made towards enacting said rules – the ANPRM – as inactive after seven years without movement. *See* Office of Information and Regulatory Affairs, *Inactive RINs: 2017 Agenda Update*, *supra*. As a result, it appears unlikely that the agency will make itself heard in the near future.

The inactive status of the ANPRM also contradicts the Defendant's suggestion that the Plaintiff made a prior application to the DOJ. Courts find that this factor supports primary jurisdiction abstention when the plaintiff herself made an application to the relevant agency regarding the specific dispute underlying their lawsuit. *Compare Ellis*, 443 F.3d at 89 (finding prior application when plaintiff made waiver request to FCC) *and Oasis Petroleum Corp. v. U.S. Dep't of Energy*, 718 F.2d 1558, 1566 (Temp. Emer. Ct. App. 1983) (parties submitted agreements to Department of Energy for approval), *with U.S. ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 340, 357 (S.D.N.Y. 2004) (finding no prior application when plaintiff opted pursue claims through the judicial system, rather than the agency). Here, the only evidence of a prior application is an inactive notice of proposed rulemaking only broadly addressing the topic of website accessibility. Given the DOJ's prolonged silence, the prior application factor weighs against referral to the agency on the basis of primary jurisdiction.

Although the Court understands the Defendant's desire to wait until more definitive guidance from the DOJ exists, the Court must also consider the Plaintiff's right to a prompt

adjudication of her claim. Therefore, the Court will not delay the resolution this matter until the DOJ decides to take up the issue again. *See Andrews*, 268 F. Supp. 3d at 403 ("The court will not delay in adjudicating his claim on the off-chance the DOJ promptly issues regulations it has contemplated issuing for seven years but has yet to make significant progress on."); *Del-Orden*, 2017 WL 6547902, at *14 ("The Justice Department, however, has not rendered any such interpretation and there is no charter for this Court to defer doing its duty while waiting for one.").

As a result, the Court denies the Defendant's request to abstain pursuant to the primary jurisdiction doctrine.

**E. DUE PROCESS**

The Defendant argues that affording the Plaintiff injunctive relief would violate the Defendant's right to due process because neither the ADA nor its implementing regulations set forth a particular standard for website or mobile application accessibility. The Court disagrees. The lack of specific regulations do not excuse non-compliance with the ADA.

Title III mandates that places of public accommodation cannot discriminate on the basis of disability by denying equal access to the goods, services, and benefits offered to the public. 42 U.S.C. § 12182(a). To effectuate this mandate, the statute requires public accommodations to provide "reasonable modifications" or "auxiliary aids and services" under certain circumstances. *Id.* §§ 12182(b)(2)(A)(ii)–(iii). Therefore, text of the statute, at a minimum, provided the Defendant notice of its general obligation to ensure equal access, including the potential requirement to provide reasonable accommodations.

The Defendant does not argue that Title III itself infringes on its due process rights. Nor does the Defendant claim that websites fall entirely out of reach of Title III. Rather, the Defendant

appears to believe that it lacks sufficient notice on ***how*** to comply with Title III due to the absence of DOJ regulations designating a specific website accessibility standard.

However, this argument fails because the statutory mandate of Title III provides the Defendant ample notice of its duty not to discriminate. DOJ regulations may amplify or augment the ADA's general mandate. The absence of those regulations does not displace the affirmative obligation created by the statute. *See Andrews*, 268 F. Supp.3d at 403–04 (rejecting argument that "finding that a public accommodation's website must be made accessible to the blind would violate the defendant's right to due process because the DOJ has not issued regulations or guidance specifying how"). "As several courts that have addressed this question have concluded, '[t]he lack of specific regulations does not eliminate [the [D]efendant's] obligation to comply with the ADA or excuse its failure to comply with the mandates of the ADA.'" *Access Now, Inc.*, 2017 WL 5186354, at *6 (quoting *Hobby Lobby*, 2017 WL 2957736, at *4); *Dave & Buster's, Inc.*, 2017 WL 6371367, at *4; *CVS Pharmacy, Inc.*, 2017 WL 4457508, at *5.

In support of its due process objections, the Defendant claims that the DOJ made an intentional decision to exclude websites from the ADAAG. Therefore, according to the Defendant, application of accessibility standards under Title III would amount to retroactive application of a standard to past facts.

Notwithstanding that the Defendant's Title III obligations exist even in the absence of DOJ implementing regulations, the factual predicate for the Defendant's argument is incorrect. For over two decades, "the DOJ has repeatedly affirmed that Title III applies to websites that meet the definition of a public accommodation." *Hobby Lobby Stores, Inc.*, 2017 WL 2957736, at *4; *Yum! Brands, Inc.*, 2018 WL 566781, at *4. The DOJ has expressed this view in congressional hearings, amicus briefs, and other public statements. *Gorecki*, 2017 WL 2957736, at *4–5. In the ANPRM,

15

it confirmed its position that "ADA applies to Web sites of private entities that meet the definition of 'public accommodations,'" ANPRM at 43464, explaining that: "the statute's broad and expansive nondiscrimination mandate reaches goods and services provided by covered entities on Web sites over the Internet," *id.* at 43463. As a result, the facts belie the Defendant's claim that the DOJ believed that websites and mobile applications somehow fell out of the purview of Title III.

The Defendant complains about the possibility of being subjected to a "generalized 'equal access' standard not found within the ADA nor its detailed regulations." Mot. to Dismiss at 18–19. In raising this argument, the Defendant appears to take issue with the ADA itself. As Judge Weinstein explained when rejecting a similar argument:

> The defendant's principal complaint appears to be that it wants there to be black-and-white rules for ADA compliance, and here, there may be shades of gray. But the anti-discrimination provisions the defendant is accused of violating are not simple checklists of clear-cut rules—they are standards that are meant to be applied contextually and flexibly. The "gray" the defendant complains of is a feature of the Act.

*Andrews*, 268 F. Supp. 3d at 403–04. Here, the Defendant does not claim that the ADA as a statute is unconstitutionally vague, and the Court does not share the Defendant's concerns about the potential ills of a regime imposing "generalized equal access standards."

In arguing to the contrary, the Defendant relies on two somewhat analogous cases. Neither persuade the Court.

First, the Defendant directs the Court to *Robles v. Domino's Pizza, LLC*, No. 16-cv-6599, 2017 WL 1330216, (C.D. Cal. Mar. 20, 2017), in which the Central District of California denied a request for an injunction forcing the defendants to ensure compliance with version 2.0 of W3C's Web Content Accessibility Guidelines ("WCAG 2.0"). *Id.* at *8. However, *Domino's Pizza, LLC* was a unique case. The plaintiff sought to impose a specific set of technological requirements on

regulated entities developed by a private entity, without the statutory requirements of the ADA in mind, and without the input of the DOJ. *Id.* *5. Thus far, every court that has addressed *Robles* declined to extend its application to situations where the Plaintiff only seeks injunctive relief broadly requiring compliance with the ADA. *Andrews*, 268 F. Supp. 3d at 403; *Castillo v. Jo-Ann Stores, LLC*, 286 F. Supp. 3d 870, 882 (N.D. Ohio 2018); *Yum! Brands, Inc.*, 2018 WL 566781, at *5; *Rios v. New York & Co., Inc.*, No. 2:17-cv-4676, 2017 WL 5564530, at *6 (C.D. Cal. Nov. 16, 2017); *Access Now, Inc.*, 2017 WL 5186354, at *9 n. 20; *Dave & Buster's, Inc.*, 2017 WL 6371367, at *3–4; *CVS Pharmacy, Inc.*, 2017 WL 4457508, at *5. Similarly, the Court finds *Domino's Pizza, LLC* distinguishable because the Complaint only requests this broader form of relief. *See* Compl. ¶¶ 54–55.

Second, the Defendant urges the Court to follow the Ninth Circuit's decision in *United States v. AMC*, 549 F.3d 760 (9th Cir. 2008), where the court confronted whether the ADA required the defendant theater owner, AMC, to make modifications in order to retroactively comply with a regulation. The due process concern arose from regulations requiring viewing angles for disabled seating comparable to those for the general public. *Id.* at 763–64. In the ensuing years, considerable disagreement existed about what, exactly, this regulation required. *Id.* at 764–67. AMC interpreted the regulations to require comparable lines of sight of the screen for disabled and non-disabled seating, but not comparable angles of view. *Id.* at 767–68. Based on this interpretation, AMC received approval for its theaters "from multiple states, whose own programs had been certified by DOJ as meeting or exceeding" the requirements set by the regulation. *Id.* at 769 n.3. After the construction of 96 theaters containing a total of 1,993 stadium-style auditoria, the DOJ adopted a contrary interpretation and sought an order requiring the AMC to retrofit all of these theaters. *Id.* at 767–68. The Ninth Circuit found that that this would violate AMC's due process rights because

17

AMC had no notice of the DOJ's view on the ambiguous regulation until after it built the theaters. *Id.* at 770.

Here, unlike AMC, the DOJ has consistently and unequivocally taken the stance that Title III reaches goods and services provided by covered entities on the internet. As a result, the Defendant cannot claim that it lacked notice of the possibility that its website and mobile application might be subject to accessibility requirements.

Lastly, the Court separately notes that the Defendant's concerns about the accessibility standard to-be applied are premature. The Court need only consider the appropriate remedy in the event that the Plaintiff establishes that a violation of Title III occurred. If the Plaintiff prevails, the Defendant will have ample opportunity to be heard about the appropriateness of any remedy. *See Andrews*, 268 F. Supp. 3d at 404 ("Defendant's concerns about potential modifications and remedies are not ripe for resolution at this stage of the litigation."); *Yum! Brands, Inc.*, 2018 WL 566781, at *5 ("Whether Pizza Hut's digital offerings must comply with the WCAG or any other set of noncompulsory guidelines, is a question of remedy, not liability."); *Access Now, Inc.*, 2017 WL 5186354, at *7 ("As several other courts have observed, 'at this stage of the case it is premature to consider the remedies that may be imposed. If [the plaintffs] prevail[ ], [the defendant] will have ample opportunity to present evidence of an appropriate remedy." (quoting *Hobby Lobby Stores, Inc.*, 2017 WL 2957736, at *6)); *CVS Pharmacy, Inc.*, 2017 WL 4457508, at *4 ("[W]hether or not CVS's digital offerings must comply with the Web Content Accessibility Guidelines, or any other set of noncompulsory guidelines, is a question of remedy, not liability.").

Therefore, the Court denies the Defendant's Motion to Dismiss on due process grounds.

## III. CONCLUSION

For the foregoing reasons, the Defendants Motion to Dismiss pursuant to Rule 12(b)(6) is denied in all respects.

It is **SO ORDERED**:

Dated: Central Islip, New York

August 24, 2018

*/s/ Arthur D. Spatt*
———————————————
ARTHUR D. SPATT

United States District Judge